IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CITY OF LINCOLN, NEBRASKA, A municipal corporation, | ) ) ) | |
| Plaintiff, | ) ) | 4:10CV3030 |
| v. | ) ) | |
| WINDSTREAM NEBRASKA, Inc., WINDSTREAM COMMUNICATIONS, Inc., and WINDSTREAM CORPORATION, | ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) ) | |

This matter is before the court on the defendants' motion to strike the plaintiff's demand for a jury trial (filing no. 17).  For the reasons set forth below, the defendants' motion is denied.

## BACKGROUND

This action involves a claim by the City of Lincoln, Nebraska (the "City") against Windstream Nebraska, Inc. ("WNI") and other Windstream entities for their alleged failure to pay telecommunication occupation taxes imposed by the City under Lincoln Municipal Code 3.24.080.   The suit was initially filed in the District Court of Lancaster County, Nebraska.  WNI removed the case to this court on February 12, 2010 (filing no. 1).   WNI filed its Answer and Counterclaim (filing no. 10), followed by the City's Reply to Answer and Answer to Defendant's Counterclaim in which the City demanded a jury trial on all issues in the Complaint and the City's Counterclaim (filing no. 12).  The City moved to strike WNI's jury demand, claiming no right to a jury trial exists in tax related cases (filing no. 17).

## ANALYSIS

The Lincoln Municipal Code is silent regarding the right to a jury trial. Thus, if the city has a right to a jury trial in this federal forum, that right will originate from the Seventh Amendment of the United States Constitution. "The Seventh Amendment preserves the right to a jury trial in 'suits at common law' filed in federal court." Kampa v. White Consolidated Industries, Inc., 115 F.3d 585, 586 (8th Cir. 1997)(quoting Tull v. United States, 481 U.S. 412, 417-18 (1987)). Suits appropriate for jury trials are those which involve legal rights and remedies, rather than equitable rights and remedies. Curtis v. Loether, 415 U.S. 189, 193 (1974). The right of a jury trial is "the right which existed under the English common law when the [Seventh] Amendment was adopted." Baltimore v. Carolina Line, Inc. v. Redman, 295 U.S. 654, 657 (1935). The common law refers to the common law of England as of 1791. Id.

The United States Supreme Court established a two-part analysis for determining whether a specific cause of action requires a jury trial. Tull v. United States, 481 U.S. 412, 417-18 (1987). First, the action is compared to "18th century actions brought in the courts of England prior to the merger of the courts of law and equity" to determine if similar cases were tried to a jury. Id. Second, the court should determine whether the remedy requested is legal or equitable in nature. Id.

### A.    The Historical Right to a Jury Trial

The first Tull factor – whether this type of action historically was tried before a jury– supports the City's jury demand. The seminal case in the federal courts on this issue is Damsky v. Zavatt, 289 F.2d 46 (2d Cir. 1961). Damsky involved a claim by the United States against an individual taxpayer for the collection of taxes on real property. The taxpayer's request for a jury trial was struck by the district court. On appeal the Second

2

Circuit held, pursuant to the Seventh Amendment, the taxpayer was entitled to a jury as to his personal liability for taxes assessed solely against him.  Id. at 48.

In finding for the taxpayer, the Damsky court conducted a thorough historical analysis of the right to jury trials in tax cases.  The court reviewed the role of the Court of Exchequer with regard to actions by the Crown to recover debts owed by the subjects to the King.  The court noted that an action for the recovery of a debt was a common law action for which a right to trial existed.  Id.  Further, although the court acknowledged that the government had several remedies for the collection of debts owed to it, when it elected to sue in debt for the collection of tax, the power to do so was upheld "and the trial was to a jury at common law." Id. at 50 (citing United States v. Lyman, C.C.D. Mass. 1818, 26 Fed.Cas. Page 1024, No. 15,647).  In this respect, the court reasoned, a suit by the government to collect unpaid taxes was no different than a suit between two private individuals for the collection of a debt.  Id. at 51.  Thus, the Damsky court ultimately concluded  "under the common law of England in 1791, an action by the Crown to recover judgment for taxes was a suit at common law in which the right of jury trial existed."  Id. at 49.

WNI argues the position taken in Damsky is a minority view on this topic.  The court disagrees.  The Damsky opinion has been followed or acknowledged as good law by several federal Circuits.  See United States v. McMahan, 569 F.2d 889 (5th Cir. 1978); Farmers-Peoples Bank v. United States, 477 F.2d 752 (6th Cir. 1973); United States v. One 1976 Mercedes Benz 280S, Serial No. 11602012072193, 618 F.2d 453 n. 19 (7th Cir. 1980); United States v. Anderson, 584 F.2d 369 (10th Cir. 1978).  For instance, Anderson upheld the taxpayer's right to a trial by jury when the government brought an action to collect taxes, noting it was persuaded by the "scholarly opinion" in Damsky.  Anderson, 584 F.2d at 373. Likewise, Farmers-Peoples Bank relied on Damsky in holding an in personam action to recover on a debt, such as the action to recover taxes in Damsky, is a legal cause of action for which a "jury trial [is] appropriate."  Farmers-Peoples Bank, 477 F.2d at 756.

3

Although WNI argues "numerous courts throughout the country have recognized that a historical common-law right to a jury trial in cases presenting issues of taxation does not exist," it failed to direct the court to any federal authority which directly contradicts Damsky and its progeny, and its cited cases are either distinguishable or simply inapplicable. Den ex dem. Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. 272 (1855), cited by WNI to support its argument that the right to a jury trial does not exist in tax cases, addresses the issue of whether a customs warrant issued by the United States was a valid way to pass title to land – i.e. could the collector of customs be deprived of land without an exercise of judicial power.   Murray's Lessee merely acknowledges the government has a variety of options in which to collect taxes, but does not comment on a right to a jury trial when the government seeks to collect through the judicial process. See Damsky, 289 F.2d at 50.

WNI also relies upon Wickwire v. Reineke, 275 U.S. 101 (1927), a case in which the taxpayer was denied a jury trial on his claim to recover taxes against the United States. However, Wickwire, and the other cases cited by WNI involving taxpayer suits are easily distinguishable from the instant case.  As the court in Damsky found:

> Wickwire v. Reineke was not an action by the Government to collect taxes; it was an action by a taxpayer against a collector for their recovery, in which a jury trial had been had . . . . Significantly [Wickwire] did not say that Congress could provide for the collection of taxes by a judicial proceeding having the form of a suit at common law without a jury trial.

289 F.2d at 51.

The majority of the state cases cited by WNI also involve actions by taxpayers against the government.  See, e.g., Jernigan v. Jackson, 704 S.W.2d 308 (Tenn. 1986).  Wickwire, Jernigan, and other cases relied upon by WNI present a different issue than the one now before the court.  Specifically, a taxpayer's right to sue the sovereign has always been limited by the government's own ability to determine when and how it may be sued.  See

4

Johnson v. City of Shorewood, Minnesota, 360 F.3d 810, 816 (8th Cir. 2004).  Thus, the cases cited by WNI are inapplicable to government-initiated claims like the one currently pending in this forum.

WNI's reliance on Jernigan and other cases arising under state law is further misplaced because "[t]he right to a jury trial in federal court is clearly a question of federal law."  Kampa v. White Consol. Industries, Inc., 115 F.3d 585, 587 (8th Cir. 1997)(citing Simler v. Conner, 372 U.S. 221 (1963).  This is true even if the federal court is "enforcing a state-created right and 'even when a state statute or state constitution would preclude a jury trial in state court.' "Id. at 587 (quoting Gipson v. KAS Snacktime Co., 83 F.3d 225, 230 (8th Cir. 1996)(citations omitted)).  Thus, even where, as in this case, the ultimate resolution may depend on the interpretation of a city ordinance, the question of a right to a jury trial still rests on federal law.  As noted above, federal law clearly finds a right to a jury trial in suits for collection against taxpayers.  State law to the contrary simply is not relevant.

Consistent with the reasoning and holding of Damsky and numerous other federal cases, a historical right to a jury trial exists in judicial actions by the sovereign against a taxpayer for collection of taxes.

## B.    Nature of the Requested Remedy

The second Tull factor – whether the remedy requested is legal in nature – is also resolved in favor of the City.  The City is requesting monetary damages for unpaid taxes.  Monetary damages are consistently characterized as a legal remedy.  Kampa v. White Consol. Industries, Inc.,115 F.3d 585, 586 (8th Cir. 1997); see also Damsky, 289 F.2d at 48 (finding a jury trial appropriate in a tax case when the action was for a "money judgement and nothing more").  WNI does not dispute this characterization in the instant case.

5

### C.      Functional Considerations

Finally, WNI contends this case should not be tried to a jury because "functional considerations" weigh against requiring a jury trial.  In essence, WNI argues the case will likely turn on the definition of "telecommunication services" found in the ordinance in question, and a judge is more qualified to make the interpretation.  Further, WNI argues a jury trial will jeopardize the certainty and uniformity in the application of the City's occupation tax. In support of its arguments regarding "functional considerations," WNI cites to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

WNI's reliance on Markman is misplaced. The key issue in Markman was not whether a jury trial was appropriate; rather, the Court discussed what issues were appropriate for jury determination.   Markman, a patent infringement case, held a jury trial was appropriate as to some issues, but the interpretation of a specific portion of a patent document was to be determined by the court as a matter of law.  517 U.S. at 389-90.

The court need not and cannot at this time determine whether fact issues will survive the parties' anticipated dispositive motions.  In other words, this case may include matters which will be resolved as a matter of law, but to the extent factual disputes on cognizable claims exist, the City has a constitutionally protected right to have those fact issues tried to a jury.  The holding in Markman does not dictate otherwise.

IT IS ORDERED that defendant's motion to strike the plaintiff's demand for a jury trial (filing no.  17) is denied.

DATED this 2nd day of August, 2010.

BY THE COURT:

s/ Cheryl R. Zwart
United States Magistrate Judge

6